**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**HOLLY EISBERNER,**
         **Plaintiff,**

v.                                                              Case No. 13-C-1148

**WELTMAN, WEINBERG & REIS CO., L.P.A.,**
         **Defendant.**

---

## DECISION AND ORDER

Holly Eisberner claims that Weltman, Weinberg & Reis Co., L.P.A. ("Weltman"), violated the Fair Debt Collection Practices Act ("FDCPA") and the Wisconsin Consumer Act when it sent four collection letters to her. Before me now is Weltman's motion to dismiss all but one of her claims and for summary judgment on the remaining claim.

### I. BACKGROUND

On March 30, 2011, Eisberner filed an action in Milwaukee County Circuit Court pursuant to Wisconsin Statute § 128.21. Under this section, a debtor who is earning wages or salary but who cannot pay her debts on time may amortize those debts over a period of up to three years. See Wis. Stat. § 128.21. After the debtor files a petition under § 128.21, the court appoints a trustee to administer a repayment plan. The trustee adds up all of the debts that are subject to the petition, adds a percentage for his or her own fees, and then divides the total into regular payments that will result in all debts being repaid in full within three years. The debtor makes payments to the trustee, and then the trustee distributes payments to creditors. While the plan is pending, creditors are prohibited from using execution, attachment, or garnishment to collect the debts. However,

unlike in a federal bankruptcy, creditors are not prohibited from commencing or continuing any other collection activity against the debtor.

In the present case, the circuit court approved Eisberner's § 128.21 plan on July 7, 2011. The plan called for monthly payments over a period of three years, until July 7, 2014. During the time period relevant to this suit, Eisberner was making payments to the trustee in accordance with her plan.

One of the debts included in Eisberner's plan was a debt to Comenity Bank. In early January 2013, Comenity Bank retained Weltman to collect this debt. On January 16, 2013, Weltman mailed a letter to Eisberner that stated in relevant part as follows:

> Please be advised that this law firm has been retained to collect the outstanding balance due and owing on this account to [Comenity Bank]. As of the date of this letter you owe the amount listed above. Therefore, it is important that you contact our office to discuss an appropriate resolution for this matter. You may be able to pay on your account online via our web-pay website at www.wwrepay.com.

Makel Aff. ¶ 3, Ex. A, ECF No. 17-1. In early February 2013, Eisberner responded to the letter by writing "see attached payment agreement from 2011" on it and mailing it, along with copies of legal papers from her § 128.21 case, back to Weltman. Id. Ex. B, ECF No. 17-2. One of the legal papers indicated that Eisberner's debt to Comenity Bank was included in her § 128.21 case. Nonetheless, after receiving Eisberner's response, Weltman sent three additional collection letters to her, as described below.

On February 21, 2013, Weltman mailed a collection letter that stated in relevant part as follows:

> Despite previous notices and demands for payment, you have failed to liquidate the above referenced obligation. Your continued failure to satisfy your obligation may result in additional efforts on behalf of out client to collect this account.

> Failure to resolve this matter may result in continued collection efforts against you and possible legal action by our client to reduce this claim to judgment. In the event a judgment is rendered against you, our client may choose to exercise their option to proceed with any and all post-judgment proceedings as allowed by law in your state to protect their rights.
>
> Therefore, please submit your payment to our office by mail or you may be able to pay your account via our web-pay website at www.wwrepay.com.

Id. Ex. C., ECF No. 17-3. Weltman sent a third collection letter to Eisberner on March 8, 2013, which stated in relevant part as follows:

> As you are aware, this law firm represents our client on the above referenced matter. Perhaps you already spoke to a collection representative who explained the seriousness of this matter, or maybe you have not called us yet to discuss payment options. In any event, it is our client's desire to resolve this matter timely and amicably without further collection efforts.
>
> During this tax season, we invite you to call us toll free at 1-800-470-2286 to discuss utilizing your income tax refund as a source of funds to satisfy this obligation for a reduced amount. We would like to offer you an opportunity to take advantage of the substantial savings available by speaking with a collection representative from our office.

Id. Ex. D, ECF No. 17-4. Weltman sent its final collection letter on April 3, 2013, which stated in relevant part as follows:

> As you are aware this law firm represents the above referenced client on the aforementioned account. Perhaps you already spoke to a collection representative who explained the seriousness of this matter, or maybe you have not yet called us to discuss repayment options. In any event it is out desire to resolve this matter timely and amicably without further collection efforts. We invite you to call us toll free at 1-800-470-2286 to discuss an opportunity to receive significant savings by settling this matter for a reduced amount. You may be able to pay on your account online via our web-pay website at www.wwrepay.com.

Id. Ex. E., ECF No. 17-5.

In response to the final letter, Weltman received a letter by fax, dated April 8, 2013, from Eisberner's counsel in the present case. The letter advised Weltman that Eisberner

3

was represented by counsel and instructed it to stop sending collection letters to her. Upon receiving this letter, Weltman ceased collection activity.

Eisberner filed the present action on October 9, 2013 and alleges that the letters Weltman sent to her resulted in violations of the FDCPA and Wisconsin Consumer Act.

## II. DISCUSSION

Weltman moves to dismiss all but one of Eisberner's claims for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). Weltman moves for summary judgment on the remaining claim, see Fed. R. Civ. P. 56, in which Eisberner alleges that the letters Weltman sent after receiving Eisberner's response to its first letter constituted communications with a consumer who the debt collector knows is represented by an attorney, which the FDCPA prohibits. See 15 U.S.C. § 1692c(a)(2).

**A.     Motion to Dismiss**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In the claims that are relevant to Weltman's motion to dismiss, Eisberner argues that Weltman violated the FDCPA in two essential respects: (1) sending letters to her that were likely to confuse or mislead an unsophisticated consumer about the status of the Comenity

4

debt, 15 U.S.C. § 1692e, and (2) threatening legal action that either could not legally be taken or not was not intended to be taken, see 15 U.S.C. § 1692e(5).[1]

### 1. False, deceptive, or misleading representation

"[I]n deciding whether . . . a representation made in a dunning letter is misleading the court asks whether a person of modest education and limited commercial savvy would be likely to be deceived." McMahon v. LVNV Funding, LLC, 744 F.3d 1010, 1019 (7th Cir. 2014) (internal quotation marks omitted, alternation in original). In other words, the court views the letter from the perspective of an "unsophisticated consumer." Id. A dunning letter that is confusing is considered misleading. Muha v. Encore Receivable Management, Inc., 558 F.3d 623, 629 (7th Cir. 2009). "Whether a dunning letter is confusing is a question of fact. Dismissal is appropriate only when it is apparent from a reading of the letter that not even a significant fraction of the population would be misled by it." McMahon, 744 F.3d at 1019–20 (internal quotation marks and citation omitted).

In the present case, I conclude that it is not apparent from a reading of Weltman's letters that not even a significant fraction of the population would be misled by them. To the contrary, the letters could mislead even sophisticated consumers. The letters are misleading because they imply that the debt is not part of the consumer's § 128.21 plan. The first letter instructs the consumer to "contact [Weltman's] office to discuss an appropriate resolution to this matter." Makel Aff. Ex. A. But why would the consumer need to do that if she was already repaying the debt through a § 128.21 plan? The second letter

---

[1]The plaintiff contends that the defendant's actions violated other subsections within 15 U.S.C. § 1692e, and also § 1692f's prohibition of "unfair or unconscionable" conduct, but I will focus on the general prohibition against false, deceptive, and misleading representations and the specific prohibition of § 1692e(5).

chastises the consumer for failing to "liquidate" the debt and "satisfy [her] obligation," id. Ex. C, which again implies that the debt is not being repaid through a § 128.21 plan. The third and fourth letters imply that only by making payments directly to Weltman or Comenity could the matter be resolved in an "amicable" fashion, id. Exs. D & E, which implies either that making payments through a § 128.21 plan is not amicable or that the debt is not subject to any repayment plan.

Weltman points out that § 128.21 does not prohibit a creditor from sending collection letters or reducing a claim against the consumer to judgment. While that is true, it does not follow that sending collection letters that fail to acknowledge that the debt is being repaid pursuant to a § 128.21 plan are not confusing or misleading. Any consumer would understandably be confused, and most likely mislead, by Weltman's letters. The consumer would think, "I'm paying this debt through my plan, so why am I getting these letters which imply that I've paid nothing and have no plans to pay?" Maybe the consumer will conclude that the debt is not subject to the plan and, based on this misconception, decide to repay the debt in full outside the plan. Thus, if a debt collector is going to send a collection letter to a consumer concerning a debt that is subject to a § 128.21 plan, it should at least acknowledge in the letter that the debt is subject to the plan. Here, Weltman did not acknowledge in its letters that the Comenity debt was subject to a § 128.21 plan, and for that reason the letters could be thought to be false, deceptive, and misleading.

  **2. False threat of legal action**

Eisberner contends that Weltman's second collection letter, in which it threatened to file suit against her and use any post-judgment remedies at its disposal, violated 15

U.S.C. § 1692e(5), which prohibits a debt collector from threatening "to take any action that cannot be legally taken or that is not intended to be taken." Weltman contends that its letter did not violate this provision because § 128.21 does not prohibit a creditor from reducing its claim to judgment and does not prohibit a creditor from invoking post-judgment proceedings other than execution, attachment, or garnishment. I conclude that Eisberner has stated a claim for violation of § 1692e(5).

First, whether or not Comenity was legally entitled to reduce its claim against Eisberner to judgment and utilize some post-judgment proceedings, it is reasonable to infer that Comenity never intended to either obtain a judgment or use the few post-judgment proceedings available to it. Because the Comenity debt was subject to the § 128.21 plan, Comenity was already receiving regular payments on its debt, was due to be repaid in full, and could not use the most common post-judgment remedies (i.e., execution, attachment, and garnishment) to accelerate payment of its debt. In light of these facts, why would Comenity waste its time by initiating a lawsuit and obtaining a judgment against Eisberner? Most likely it would not, and therefore it is plausible to infer that Weltman threatened to take legal action that it knew Comenity would not authorize it to take, in violation of § 1692e(5).

Second, Weltman's letter could be reasonably construed to contain a threat to initiate post-judgment proceedings that neither it nor Comenity was legally entitled to initiate, namely, execution, attachment, or garnishment. Weltman contends that its threat to pursue post-judgment remedies was permissible because Weltman could have taken a supplemental examination under Wis. Stat. § 816.13(1)(b), docketed the judgment in counties in which Eisberner owned real estate, encumbered her property with liens, and

asked a court commissioner to enter turn-over orders under Wis. Stat. § 816.08. Putting aside the question of whether Weltman was legally entitled to invoke all of these proceedings,[2] they likely are not the proceedings an unsophisticated consumer will think of when being threatened with "post judgment proceedings." Makel Aff. Ex. C. Rather, the unsophisticated consumer is likely to think that the debt collector is threatening to garnish her wages and seize her property—i.e., to use proceedings such as execution, attachment, and garnishment. Thus, Eisberner has stated a claim for violation of § 1692e(5) based on a threat to take action that could not be legally taken.

**B.      Motion for Summary Judgment**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I take the evidence in the light most favorable to the non-moving party and may grant the motion only if no reasonable juror could find for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 255 (1986).

Weltman moves for summary judgment on Eisberner's claim that Weltman sent collection letters to her after it learned that she was represented by counsel, in violation of 15 U.S.C. § 1692c(a)(2), which provides as follows:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—

---

[2] In particular, I question whether Weltman could have conducted a supplementary examination or obtained turn-over orders, as those proceedings are intimately connected with execution.

8

> . . . .
>
> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer[.]

Eisberner contends that, as of February 11, 2013, Weltman was on notice that Eisberner was represented by counsel with respect to the Comenity debt because she sent documents to Weltman on that date indicating that the trustee of her § 128.21 plan, who was an attorney, was managing her debts, and that she was paying attorneys' fees to an attorney with respect to that debt.

First, although Eisberner seems to claim that she was represented by the trustee of her § 128.21 plan, she develops no legal argument suggesting that a consumer is "represented," as that term is used in § 1692c(a)(2), by the § 128.21 trustee . Therefore, to the extent Eisberner intended to press this claim, I consider it forfeited. See Bank of America, N.A. v. Veluchamy, 643 F.3d 185, 189–90 (7th Cir. 2011). I will examine only whether Weltman had knowledge that some attorney other than the trustee represented her with respect to the Comenity debt.

On that point, Eisberner argues that Weltman knew that she was represented by an attorney because, in one of the legal papers concerning her § 128.21 plan that Eisberner mailed to Weltman on February 11, 2013, it is stated that "[t]he scheduled debts <u>and attorney fees to be paid to debtor's counsel</u> through this plan total $14,772.29." Markel Aff. Ex. B at p. 6 of 7. This paper was a report from the trustee to the court recommending approval of Eisberner's § 128.21 plan. The report was dated June 30, 2011, more than a year and a half before Eisberner mailed the report to Weltman. Eisberner contends that,

9

upon receiving this report, Weltman had actual knowledge that the attorney referenced in this report (who is not identified by name) was still representing her with respect to the Comenity debt as of February 2013.[3] That is a stretch. To the extent that the report mentioned attorneys' fees, the context suggested that the fees were for preparation and filing of the § 128.21 plan, not for representing the consumer with respect to all debts that are subject to the plan for years into the future. Thus, from this lone statement buried in Eisberner's mailings of February 11, 2013, a reasonable factfinder could not conclude that Weltman had actual knowledge that she was represented by an attorney with respect to the Comenity debt. Accordingly, summary judgment will be granted on this claim.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendant's motion to dismiss is **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's motion for partial summary judgment is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 14th day of August, 2014.

        s/ Lynn Adelman
        _____
        LYNN ADELMAN
        District Judge

---

[3]Eisberner has submitted no evidence indicating that the attorney referenced in the report still represented her with respect to the Comenity debt as of February 2013 and later. However, Weltman has not moved for summary judgment on the ground that Eisberner was not, in fact, represented by this attorney in February 2013 and later.